Morning Council. We're sorry that the timing got kind of goofed up. The panel all voted to grant your request to simplify for us, so I just said grant the motion and that turned into 30 minutes per side instead of 30 minutes, so I hope you're prepared to do it the way you offered to do it, but if our last minute change causes any difficulty, we'll make sure that the arguments get heard that need to be heard. Not at all, and thank you, Judge Loken. Council, 3M has called, but we're ready when you are. Thank you, Judge Loken, and may it please the court, Ben Hulse for the appellants, 3M Company, and Arrow Technologies. 3M readily satisfied its low burden at the removal stage to present a colorable government contractor defense. The district court made a series of fundamental legal errors in its remand decision. 3M's request is that the court remand with instructions to vacate the orders remanding the state court, and I'd just like to walk through the mistakes that were made by the district court here. Before you do that, Council, there's something of a threshold nature that's bothering me. Was 3M acting as a government contractor when it made earplugs sales to civilians into one or more private markets? Indeed it was, Your Honor. What contract documents would confirm that? Well, Your Honor, not an express written contract, but that's not necessary for the government contractor. I'm sure you know the holding in Watson v. Philip Morris, and I don't see any way that 3M sales to civilians meets the assist and carry out elements of Watson, and we're not talking about the government contractor defense and the merits, we're talking about removal. The key thing to understand, Your Honor, just to respond directly, is that this product is a joint military-civilian product. This is a product that was designed for military use, was packaged in a blister pack for sales both to the military and also to civilians as well. Okay, but when Sikorsky and the government create an engine or other equipment for a military helicopter, and Sikorsky then sells the same product into the private market, there's no removal there. Your Honor, Judge Loken, just to respectfully disagree, and there is precedent for this in the Glasgow case out of the 11th Circuit, there is exactly your helicopter example. Was that design or was that warning? It was a design case. If the government designs it, that's a different issue than warning. I wouldn't accept that distinction, Judge Loken, because the warnings and the design are closely related here, and that's the facts that we've emphasized in our removal paper. How did the warnings that 3M gave to the civilian purchasers assist or help the government carry out its military purchase contracts? The key is that the warnings are given to both civilian and military purchasers. The warnings that we focused on in our evidentiary showing and our allegations in our removal papers and opposition to remand show that this was a product that was designed and packaged for military purchasers and also incidentally sold to commercial purchasers as well. You say incidental, but I don't see that. You see, I think so many of these cases that are not removal cases get confused between the federal contractor defense and the defense of preemption, which applies in state court as well as federal court. If 3M has to defend these civilian cases in state court, it will have its federal contractor affirmative defense, preemption-based defense. But that does not create federal jurisdiction under the officer statute. I mean, Justice Breyer, for a unanimous court in tracing over 200 years of history, couldn't have been clearer on this point. Judge Loken, I think the key here is to emphasize the genesis of both the product and the warnings that come to address the specific design defect that is alleged here. I'm still stuck on Glasgow because I thought Glasgow was a case where it wasn't sold directly by the manufacturer for civilian use. It was sold to the government, delivered in some unknown manner, perhaps through surplus, perhaps stolen, and then ends up in the leather goods store, and then is bought outside of the ordinary chain in this sort of leather goods store, and it ends up out there. But there's no evidence that Glasgow was directly selling these leather belts to the public. It is a surplus sale, that's correct, Judge Erickson. So the government is the one that sold that into the stream of commerce, not Glasgow. That's accurate as best we know from the Glasgow record. Right, because we don't really know how it got to the leather shop. No, we don't, and in fact, because these cases are so thinly pled, that can in fact be the scenario in the cases that are on appeal, Judge Erickson, which is why it's necessary. And I agree with Judge Logan that the federal contractor defense can be presented in state court, and in fact is being presented in state court in remanded cases. But the emphasis, for example, this court's holding Jack's case, is that if the defendant decides to remove, there is a federal forum for the federal defense. We may not prevail on it, but there is still a federal forum. Only if you meet the person acting under criteria, at least on that. I mean, if you've got diversity, if you've got another federal question, if they had joined a design claim, you might or might not have a Glasgow, but you'd have a different case. But I just don't see, there's no acting under with respect to the warning, even if the government wrote the warning for you. Which is essentially what happened here, Judge Logan. I know that's your claim, but I don't think that's not enough to confer federal jurisdiction. It may well be a heck of a good preemption type federal defense. Let me specifically address the acting under and why that's met here. If I could, I'd just talk a little bit about the history of both the design and the warning and how intertwined they are. What we have here in the setting just before September 11th is the military's desire for an earplug that can provide some protection against intermittent gunfire, while also preserving situational awareness. And service members' ability to hear commands while they are in combat. So Arrow and the military jointly developed this product, this dual-ended earplug to address that need. The military is concerned that it doesn't fit into its standard issue carrying case for GIs. So they ask that the earplug be shortened. This is the source of the defect claim that is alleged in all of these cases, even though they are denominated as warnings cases. Then what Arrow discovers through testing is that the shortening of the earplug means that in certain individuals, a fit can be improved through folding back the outer ring. And so they, along with the military, develop a series of instructions that are then reflected in the military's standard issue wallet card for GIs. That combat arms earplugs are typically provided to military service members in bulk, not in individual packaging. But Arrow then decided to develop an individually blister-packed product for sales both to military... Let me cut you off because we've read all those facts. They've been thoroughly and very well briefed. But let's take the Navy warship asbestos cases. What is it, Latty-O-Lay in the 5th Circuit and Lighty in the 9th Circuit. Now if that contractor had developed a unique asbestos product that satisfied the military's particular needs for its warships, and then turned around and sold that same product to the Greek shipping magnates in the private sector, there wouldn't be any preemption basis. If the facts are, in that scenario, that the military was intimately involved in the design and the warnings and instructions to go along with the design, and the product was sold at the same time to military and non-military purchasers, then an attack, a challenge to the warnings, instructions, or designs would earn a federal... And what cases are you relying on for that? Certainly not the cases that I talked about. Those were all military acquisition-related injuries. And again, I'd come back, Judge Logan, to the Glasgow case, recognizing Judge Erickson's factual distinction. It's the same thing. It's in the military market. Military procurement was the source of the ultimate injury. And of course, Glasgow is not controlling. But I don't see anything here that fits Justice Breyer's careful historical discussion of what the reason, the purpose behind the federal officer removal provision and the way it's been interpreted by the Supreme Court since codification in 1948. I'd like to address another subject, which is the disguised design defect claim here as well, which is, as the district court said in its whole decision, if there had been a defect claim pled here, there is no doubt that there would be federal jurisdiction. What happened here, Your Honor, is there is, in fact, the lion's share of cases, which are now sitting in the Combat Arms MDL in Florida, also originated and were removed from Minnesota State Court. They are pled virtually identically to these cases. Virtually identically to these cases involve both civilian, though predominantly military, plaintiffs. And all that the plaintiffs did here is remove the express design defect allegations, but only in the Graves case. They left them in, in Hall and the other cases that are currently before the court. So these claims are design defect claims in all but name. Counsel, why can't the plaintiffs decide which claims to bring and which not to? I mean, you may be right, but there is such a thing as a failure to warn claim. So I'm curious as to what our authority would be to restructure a plaintiff's complaint like you proposed. Well, the specific authority that we refer to is the Supreme Court's decision in the context of drug preemption in the Bartlett case. But it doesn't take a far leap to see what's going on in these complaints. And I think Hall and the other complaints are a great illustration. They start out, allegation one, saying that this is a case about a design defect. And the plaintiffs, to prove their failure to warn claim, are proving, are setting out to prove, that in fact this product is defective because of the shortening of the stem. The shortening of the stem that was requested expressly by the U.S. military in order to fit in their carrying case. So the plaintiffs simply end-ran around that by dropping the express design defect claim. But substantively, the complaints are identical to those that have been determined in the MDL to be subject to federal jurisdiction and removal. But the plaintiff is the owner of their claims. They get to frame them the way they want to. And if they frame this claim not as a design defect but as a failure to warn, what they're really doing is they're conceding that the product was properly designed, it was subject to misuse if not properly warned, it was misused because there were not proper warnings, and that the damages flow naturally therefrom. Isn't that entirely within the scope of their right to plead the case they want to plead? To a degree, Your Honor, but the actual substantive allegations, Judge Erickson, are design defect allegations. They prove or seek to prove, as shown in their complaint, their failure to warn claim by showing that the product is in fact defective based on what the military told the hero to do. So at that point, the district court was certainly not required to accept the plaintiff's characterization of the claim. It can look, particularly in the context of a preemption-like defense, at the substance of the claim. I think my time is up. I've got one more question. As I understand the division of labor here this morning among the various cases, you're supposed to be covering in this time frame the contractor defense for the Coleman plaintiffs. And it seems to me that the Coleman plaintiffs, to the extent they purchased in the military procurement market, which seems to be a lot of them, are not subject to my acting under problem. I agree with that absolutely, Judge Loken. So all the issues briefed on the contractor defense are alive at least as to those plaintiffs? Correct, Judge Loken. Okay. Mr. Gustafson? May it please the court, counsel, good morning, your honors, Dan Gustafson on behalf of the plaintiffs. Let me start, Judge Loken, with your questions. You hit the nail right on the head. There is no contract here. There is no obligation here with respect to 3M's sales of these earplugs into the commercial market. There is nothing that invokes the federal interest or requires the preemption that Boyle created over 30 years ago to protect 3M's voluntary sales into the commercial market. Counsel, why didn't you argue that? Why did you concede the acting under point? Well, we didn't challenge the acting under point, Judge, that's right, at the district court. But we challenged it in the causal connection aspect of the test. As you know, that's one of the elements. And we say, without a contract, there can't be any causal connection, no matter how broadly you read the causal connection after the 2011 amendments to the statute. Okay, I understand that. And the cases do kind of jumble around the two elements. So go back to your main thesis. Yeah, it really is true that the causal connection and the colorable argument sort of run together. But here we have a complete failure of colorable. As you know, this court has said colorable means plausible in U.S. v. Todd. And the United States Supreme Court has said plausible means that you have to show something more than possible. And both Iqbal and Twombly make the clear point that when evidence can be read as being both legal or illegal, as the case may be, or supporting or not supporting, that that evidence, that ambiguity in evidence, doesn't push it over the level of plausibility. And here we have a situation where 3M controls all of the evidence. This is not a situation where a plaintiff is making a complaint and is forced to try to fill in the blanks because the companies or entities that they're trying to sue hold the evidence that they need. Counsel, they don't control the military witnesses who would be necessary to establish what they allege. No, that's true, Judge. But what I'm saying is that if 3M really had an obligation to design these earplugs for the military, they should have a copy of the procurement contract, which Boyle requires. They should have the detailed specifications, which they provided to the military. Apparently they didn't. They should have the military's responses to those precise detailed specifications. Not in the record. They should have evidence of government approval decisions, government exercising its discretion to choose a design with respect to the earplugs. None of that is in the record. They don't have any evidence of, even in the absence of a contract, they don't have any evidence of a detailed back and forth where the parties discussed various methods of manufacture or design that would qualify under Boyle. If you look at the cases that they rely on, Tate and Oliver and Pape and these asbestos cases, there is, first of all, all of them have a government contract. All of them have a government procurement contract, which Boyle requires. Secondly, they have incredible amount of detail in the record with respect to the back and forth. In Oliver, there was, you know, dozens and dozens of revisions to the designs and to the manuals and to the operating control books. In Tate, the Sixth Circuit case that 3M relies on so heavily, back and forth, over and over, setting forth the specifications. In this case, none of that evidence is in the record. The best 3M can do, and again, if they really had contracts and all of this with the government, they would have it in their files. They don't have to rely on the government to say, here's what we did. They would know what the government did because they're in negotiations with the government. The best they can do on the failure to warn claim is produce one email in which they set forth, here's what we plan to give for instructions on the commercial product. And Doug Olin, we don't even know from the record whether Doug Olin could bind the government. He clearly is employed by the Navy as a consultant with respect to audiology and all the rest, but we don't know whether he's the kind of person who's high enough at the government who could enter into a military procurement contract. No evidence in the record at all about that. And he says, hey, did you guys intentionally forget to put on this part about, you know, using the smaller one-ended plug if you had small ear canals? You might want to include that. And then back to 3M, the email chain goes, and the approval, they don't say, let's change this and then go back to the government and see if it's acceptable. They say, hey, that's a good idea that he suggested. Let's change it and go forward to market. So even, you know, and that's the plausibility problem that they have. That email exchange, even if it were some record of a contract, it doesn't have the information sufficient for this court to conclude that there was, in fact, a requirement put on 3M. At best, it's ambiguous. And under Iqbal and Twombly, plausibility means ambiguity is not enough to nudge it over the line. And so even if you give 3M the benefit of the doubt on all of the evidence with respect to civilian sales, they haven't gotten anywhere close to showing that this is the kind of contract that we need to shake federalism, shake our federalist system up and bar state tort law claims in order to protect the military procurement process. So, and as I think it was you, Judge Loken, pointed out, there's not a single case that goes this far. At the very best, Glasgow suggests that a product that fell its way into the marketplace by some way that's unknown would be protected by the design defect preemption where the maker of the product didn't have anything to do with that product getting into the commercial market. Here, we have the exact opposite situation. 3M made a conscious decision to inject these products into the commercial market. They made that decision on their own. And there's frankly no government interest at all in 3M selling in the commercial market and certainly not a uniquely federal interest that warrants the Boyle preemption doctrine being applied here. There was some comments made, I want to switch now to the notion that we pleaded a design defect. I think, Judge Erickson, you hit it right on the head. The failure to warn claims do not require us to prove a design defect. All we have to prove is that the product had a risk and that the warning would have mitigated that risk. We've set those cases out in our brief. And in this court, in Johnson v. MFA Petrel out of 2012, this court made clear that the plaintiff is the master of their plea so as to avoid federal jurisdiction if they so choose. We disavowed the design defect claim in the district court and we disavowed the design defect claim here. We don't actually make a claim for design defect in the complaints that we filed. We make a single failure to warn for civilian use about the earplug. Now, let me just switch gears here and talk a little bit about what I see as the problem with the test that 3M proposes with respect to the failure to warn. As you know, the courts have struggled to apply Boyle even in the design defect context consistently, but even more so in the failure to warn. And I think the reason that they've had trouble with the failure to warn case is that because unlike design defect claims, where you have this back and forth and ultimately the government chooses a design, it sort of excludes to all other designs by its choice. And I think that's what the Supreme Court had in mind with Boyle when they said, if you show that the government provided reasonably precise specifications, you've shown that there's inherently a conflict because the government has picked one particular design. In the failure to warn context, it's not so easy because there can be multiple warnings that could apply depending on the type of device that you have. And so to suggest that the government, by acting only in its discretion, somehow has covered the waterfront with designs is what's caused the court to have these concerns. Well, counsel, I think there's an obvious problem with that argument when you get to the military-related plaintiffs in Coleman. Because if they bought earplugs that had what's alleged to be the Olin approach to don't put it on the boxes, don't put it in the pack, because we cover that in training. And the same claim is made, and the military is joined as a co-defendant. They'll have probably FTCA immunity. And yet the government contractor, under your theory, would be liable because, and I think the conflict is obvious, it's the same conflict that they had in Boyle. It's just with a different packaging because it's warning rather than design. Well, I don't agree with you, Judge. And here's why. Here's why. Even if you accept the evidence, first of all, there's still no evidence of a procurement contract. There's still no evidence of sufficient back and forth between the government and the 3M with respect to the warning. At the very best, you have the suggestion that the government wrote some sort of instructions and gave them to 3M and 3M said okay. It certainly is not the kind of back and forth, even in the military context, that Boyle requires. My hypothetical assumed that they did prove it. They proved either government-designed warnings or government-heavily influenced or dictated warnings. I realize that you claim that they haven't gotten over the threshold on that here. But if you assume that they can prove it, then it seems to me the conflict that I stated is real. Well, so the second part of my answer was going to be this, Judge. With respect to the warning, the very best evidence 3M has on the warning is that the military told them don't put it in the packaging. We'll tell the soldiers at basic training. So first of all, as the MDL court found when they ruled against the 3M on summary judgment here, finding as a matter of law that the contractor defense failed, both as to design defect and warning, they said that back and forth with the government about whether to put the warning in the bag or inside the packaging is nothing more than a location discussion. It doesn't have anything to do with whether you could put a warning on the box. Was that the district judge or was it an appellate ruling? It was the appellate. That's not controlling. No, no, of course it's not. It sounds wrong to me, frankly, what I read. Judge Rogers, a little bit I read. It's certainly not controlling, Judge. It is a district court opinion. But the point is that she makes the finding, Judge Rogers makes the finding, that there was no discussion about the content of the warning. The discussion was about the location of the warning, and that's a far different thing than the content. Here, and by the way, the Coleman plaintiffs, although they received, they may have received military earplugs as military contractors, they certainly didn't receive them from the military, and they certainly didn't get the warning in the sense of going through basic training. But even if they had... Was Judge Rogers making a merits-based decision there? And if so, didn't she have the ability to look at deeper, to dig deeper into the facts of the case than we have here? Oh, for sure. She made a summary judgment decision based on a full record, and that's, of course, not the standard here. We acknowledge that. My only point was that... But the question of plausibility is something different, really, and can we really... Even if Judge Rogers has this completely right, can we really rely on any of those findings? I'm sorry, I didn't mean to interrupt you, Judge. Not for the cases that were removed before her summary judgment order, of course not. The plausibility standard applies, the Twombly-Iqbal plausibility standard, and we don't back away from that at all. My only point was that she concluded, and it's correct on the record. If you look at the record that 3M has submitted, the record is that the only discussion that they had about warning with respect to putting it in the earplugs packaging was as to location, not as to content. They didn't have a discussion about... Counsel, I have to ask you, how many minutes would it take my law clerks to find Minnesota tort cases in which failure to warn liability has been based on not having the warning in the right place? I can't answer that question, Judge. You probably litigated that issue. I probably have. I probably have litigated that issue, but I see my time is up, Judge. I just want to say one last thing. I'm looking forward... I enjoy these arguments on Zoom, but I'm looking forward to seeing you all in person again. Thank you. It's mutual. Now, you two are going to argue the Coleman case? No, that's Copeland. I mean, Copeland, yeah. So, why don't I just call it, and we'll carry on. So, the next case for argument is Casey Copeland et al. versus 3M Company, number 20-3108.